UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD M. SANSONE,<br><br>             Plaintiff,<br><br>    vs.<br><br>J.C. THOMAS,<br><br>             Defendant. | Case No. 1:13-cv-01942-DAD-EPG-PC<br><br>**FINDINGS AND RECOMMENDATIONS, FOLLOWING ALBINO HEARING, RECOMMENDING THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE DENIED BASED ON DISPUTES OF FACT; BUT RECOMMENDING THAT THE CASE BE DISMISSED FOR FAILURE TO EXHAUST BASED ON EVIDENCE PRESENTED AT ALBINO HEARING**<br><br>(ECF No. 43)<br><br>**OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS** |

**I.      BACKGROUND**

Richard Sansone ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on December 2, 2013.  (ECF No. 1.)  This action now proceeds with the original Complaint on Plaintiff's Eighth Amendment claims for excessive force against defendant Correctional Officer J.C. Thomas and John Doe #1.  (ECF No. 11.)

On June 21, 2016, Defendant Thomas ("Defendant") filed a Rule 56 motion for summary judgment on the ground that Plaintiff failed to exhaust his available administrative

remedies with respect to his § 1983 claims against them in this action.  (ECF No. 43.)  On July 11, 2016 Plaintiff filed an opposition to the motion declaring that Plaintiff had attempted to exhaust his administrative remedies by filing multiple 602 grievances within the time frame, but alleging that they had all been discarded or ignored by prison staff.  (ECF No. 51.)  On July 18, 2016, Defendant filed a reply to the opposition.  (ECF No. 52.)

On October 12, 2016, the Court heard argument regarding the motion for summary judgment in connection with an initial scheduling conference.  (ECF No. 66.)  Defendant conceded that a question of fact existed regarding Plaintiff's allegations of filing proper grievances within the applicable time frame and requested an evidentiary hearing.  The Court set an *Albino* evidentiary hearing for November 17, 2016.  (ECF No. 67.)

The Court conducted the Albino evidentiary hearing as planned on November 17, 2016.  Defendant called the following witnesses:  Duane Goree, Robert Briggs, Mary Kimbrell, Alicia Erwin, Derek Madsen, and Ruben Ruiz.  Plaintiff testified on his own behalf.  The Court took the matter under advisement.  After consideration of all the evidence presented and the applicable law, the Court makes the following findings and recommendations.

## II. SUMMARY OF PLAINTIFF'S COMPLAINT

The following are Plaintiff's allegations as presented in his Complaint.  Defendant's motion and the evidentiary hearing did not cover the substance of these allegations; it only concerned the question of whether Plaintiff properly exhausted his administrative remedies before filing this lawsuit.

Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR), brings this civil rights action against Defendant Correctional Officer J.C. Thomas and John Doe # 1, employees of the CDCR at Corcoran State Prison. The events at issue in this lawsuit occurred while Plaintiff was housed at Corcoran State Prison. Plaintiff alleges that on October 22, 2013, he was escorted to the Dental Clinic by Defendant Thomas. Plaintiff alleges that he was irritated with the dental assistant because she was asking him questions that he had already answered. In particular, the dental assistant allegedly asked questions "such as why plaintiff was convicted of, the reason for his housing, and why he felt

he was entitled to any dental care and treatment." (ECF No. 27 at p. 4.) Plaintiff became irritated and the questions and asked to be returned to his cell.

Plaintiff alleges that Defendant Thomas then approached Plaintiff and "grabbed Plaintiff's shirt and state[d] "I'm gonna fuck you up!'" (ECF No. 27 at p. 4.) Defendant Thomas then forcibly pulled Plaintiff to his feet and "then threw Plaintiff to the floor in a unprovoked attack and hit Plaintiff with full force with his fist to the jaw." (ECF No. 27 at p. 5.) Plaintiff alleges that Defendant John Doe #1 then "pounced on Plaintiff's neck with his knee while Thomas drove his knee with his full weight to Plaintiff's back causing shooting pain from the neck to lower back." (ECF No. 27 at p. 5.)

## III. LEGAL STANDARDS

### A. Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process. Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 90 (2006).

As the U.S. Supreme Court recently explained in Ross v. Blake, 136 S.Ct. 1850, 1856 (June 6, 2016) regarding the PLRA's exhaustion requirement:

> [T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies. . . . [T]hat edict contains one significant qualifier: the remedies must indeed be 'available' to the prisoner. But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'

3

Id. (internal quotations and citations omitted)

In deciding a motion for summary judgment "for failure to exhaust nonjudicial remedies under the PLRA, a district court may look beyond the pleading and decide disputed issues of fact." Morton v. Hall, 599 F.3d 942, 945 (9th Cir. 2010).

### B. Motion for Summary Judgment for Failure to Exhaust

The failure to exhaust in compliance with section 1997e(a) of the PLRA is an affirmative defense that Defendants have the burden of raising and proving. Jones, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). On April 3, 2014, the United States Court of Appeals for the Ninth Circuit issued a decision overruling Wyatt with respect to the proper procedural device for raising the affirmative defense of exhaustion under section 1997e(a). Albino v. Baca ("Albino II"), 747 F.3d 1162, 1168–69 (9th Cir. 2014) (*en banc*). Following the decision in Albino II, defendants may raise exhaustion deficiencies as an affirmative defense under section 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6) or (2) a motion for summary judgment under Rule 56. Id. If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(e). Jones, 549 U.S. at 223–24; Lira v. Herrera, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino II, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted"). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen

v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010). In judging the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). The Court must liberally construe Plaintiff's filings because he is a *pro se* prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In a summary judgment motion for failure to exhaust, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino II, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with defendants, however. Id. "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166.

### C.      **Evidentiary Hearing**

If "summary judgment is not appropriate," as to the issue of exhaustion "the district judge may decide disputed questions of fact in a preliminary proceeding." Albino II, at 1168. When feasible, such questions of fact should be decided before addressing the merits of the claim. Id. at 1170. "If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits." Id. at 1171.

Furthermore, while parties may be expected to simply reiterate their positions as stated in their briefs, "one of the purposes of an evidentiary hearing is to 'enable [ ] the finder of fact to see the witness's physical reactions to questions, to assess the witness's demeanor, and to hear the tone of the witness's voice.'" United States v. Mejia, 69 F.3d 309, 315 (9th Cir. 1995). All of this assists the finder of fact in evaluating the witness' credibility. Id. It is only in "rare

instances . . . that credibility may be determined without an evidentiary hearing." Earp v. Ornoski, 431 F.3d 1158, 1169–70 (9th Cir. 2005).

IV. **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    A. **Parties' Positions as Presented in Motion for Summary Judgment Papers**

In their motion for summary judgment, Defendants argue that Plaintiff failed to exhaust his administrative remedies concerning his allegations that the Defendants used excessive force against him. Plaintiff's complaint stems from an incident which occurred at California State Prison--Corcoran on October 22, 2013. Plaintiff did not submit any non-healthcare appeals between October 22, 2013 and December 2, 2013, according to records from the appeals office. Plaintiff submitted one non-healthcare appeal directly to the CDCR Office of Appeals for the Third Level, which was rejected on November 20, 2013 because it had not gone through the required lower levels of review. Plaintiff executed his original complaint in this action on November 20, 2013, twenty-nine days after the alleged use of excessive force. Such a short time period was insufficient to allow the prison to exhaust administrative remedies.

Plaintiff claims, in contrast, that he displayed due diligence and made all attempts to exhaust his administrative remedies but was not successful. Plaintiff claims that between October 22, 2013 and December 2, 2013, Plaintiff submitted numerous appeals. He also sent two separate letters to the warden. At no time did he receive a notice from the appeals coordinator or the warden that the letters had been received. Finally, Plaintiff sent another 602 appeal to the chief appeals office at Sacramento explaining that his appeals were not getting processed at the prison. That office rejected his appeal. He thus had no option but to file this complaint.

    B. **Recommendation Regarding Summary Judgment**

The parties' positions in the summary judgment motion largely turn on a factual difference. Defendant claims that no appeals were timely filed with the correct appeals office at the prison, while Plaintiff claims that he sent multiple timely appeals, which were all discarded.

During a hearing on the summary judgment motion, defense counsel conceded that there was a factual disagreement, and requested an evidentiary hearing under *Albino*, which the Court held after that time.

Because Defendant's motion for summary judgment cannot be determined based on undisputed facts, the Court recommends that it be denied so that the defense of exhaustion of administrative remedies may be decided with the benefit of the evidence presented at the *Albino* hearing. (ECF No. 43.)

## V.   FINDINGS OF FACTS AND CONCLUSIONS OF LAW BASED ON EVIDENTIARY HEARING ON EXHAUSTION

On November 17, 2016, the Court held an evidentiary hearing on the question of exhaustion. The Court heard testimony and evidence regarding the applicable grievance process and makes the following factual findings.

### A.   Findings Regarding California Department of Corrections and Rehabilitation (CDCR) Administrative Appeal System

The State of California provides its prisoners and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15 § 3084.1(a)(2006).

The process is initiated by submitting a CDC Form 602 (rev. 12-87). Id. at § 3084.2(a). Attached to that form is a form called CDCR Form 22. In that form, an inmate may request any action to any staff member within the institution. Defense witness Duane Goree, an appeals coordinator at Corcoran State Prison, testified that "Anytime an inmate submits an appeal to a staff member he has the option of attaching a Form 22 to an appeal as a receipt that he had delivered it to a staff member." (Transcript of Proceedings before Judge Grosjean, November 17, 2016, Albino Hearing ("Tr."), at p. 8:23-25.) Mr. Goree also testified that inmates had the option to either deliver a form 602 to a staff member or place it in a secure appeal box. (Tr. at 11:5-9.)

Once the appeals office receives the 602 appeal, they are date stamped and reviewed. (Tr. at 15:7-9.) If the appeal is deficient for any reason, the inmate is issued a CDCR 695

1  rejection form, which states what he must do to have his appeal accepted.  (Tr. at 15:20-24.)
2  Inmates have thirty days of the first action to submit a 602 appeal.  (Tr. at 16:8-18.)  If the
3  appeal is accepted, it is assigned to the appropriate area for a response.  (Tr. at 17:21-14.) The
4  appeals office has 30 days to respond to an inmate regarding a 602 grievance.  (Tr. at 19:1-15
5  ("Q: So from the date that an inmate submits their appeal to the first level of review, what's the
6  amount of time that—the minimum amount of time that has to go by before they can expect a
7  response from the first level of review?  A:  Thirty days.").  Inmates are advised of these time
8  constraints through review of Title 15 and the information is also available on the institutional
9  television.  (Tr. at 21:10-14.)  Once the appeal has been received in the appeals office, it is
10 logged within the prison's inmate tracking system and given a log number.  (Tr. at 22:3-12.)

11     Derek Madsen, a correctional sergeant at Corcoran in 2013, testified that if an inmate
12 wanted to submit an appeal in the crisis unit at the time, he could either give it to a staff
13 member and have the staff member place it in the appeals box, or he could have submitted an
14 appeal in the box himself.  (Tr. at 84:1-6.)  There were approximately 10 medical staff
15 members assigned to the crisis unit per day.  (Tr. at 88:12-20.)  Mr. Madsen also testified that
16 the medical staff in that facility was very protective of inmates, so it would have been very
17 difficult to throw away appeals.  (Tr. at 88:21-89:3.)  Mr. Madsen has never heard of staff
18 throwing away appeals.  (Tr. at 90:5-6.)

19     Ruben Ruiz, who worked as a correctional lieutenant the enhanced outpatient
20 Administrative Segregation Unit at Corcoran in 2013, testified that Plaintiff could have
21 complained to him about not being able to process inmate appeals, but never did so.  (Tr. at
22 96:25-97:16.)  Mr. Ruiz testified he has never been made aware that any inmate appeals were
23 being mishandled in his unit.  (Tr. at 99:9-11.)  He also testified that if a staff member
24 destroyed an appeal, it would lead to progressive discipline possibly leading up to termination
25 if done with malice or intent.  (Tr. at 101:11-15.)

26     If an inmate submits an appeal to the warden's office, it is routed back to the appeals
27 office for review, logging, and processing.  (Tr. at 26:25-26:8.)  Alicia Erwin was in the
28 position of office technician in the warden's office for the chief deputy wardens in 2013.  (Tr.

76:3-16.) She testified that if she had received an appeal, she would have sent it to the appeals office. (Tr. at 78:2-8.) She also testified she would never had ignored or destroyed an appeal. (Tr. at 80:3-14.)

### B. Defendant's Evidence Regarding Plaintiff's Failure to Exhaust Administrative Procedures

Defendant put into evidence the appeals log for inmate Sansone. (Exhibit A1.) Mr. Goree testified that, according to the log, no appeals were received from Plaintiff between October 22, 2013 and December 2, 2013. (Tr. at 24:23-25:1.) Mr. Goree further clarified that the only dates listed referred to accepted appeals, but that after reviewing this log, Mr. Goree went back into the system and put in the additional log numbers and confirmed that none of the other listed appeals were submitted or rejected during that time period. (Tr. 25:19-26:2.)[1] Mr. Goree also testified that 232 appeals were received by other inmates in the same housing unit, supporting the argument that the prison grievance procedure was available at that time. (Tr. at 26:15-19.)

Mr. Goree also reviewed the database to determine if any correspondence was received from Plaintiff via the warden's office, and determined that "[t]here was nothing delivered to our office from the warden's office regarding correspondence within the time frame that we're speaking of." (Tr. at 27:9-20.)

Defendant also presented evidence of the log for Plaintiff regarding his third level appeals for this time period. (Exh. B.) According to that log, the Office of Appeals received a level 3 appeal from Plaintiff on October 28, 2013, six days after the incident occurred. (Exh. B.) That appeal was screened out by the office because it was "not authorized to bypass any level." (Exh. B; Tr. at 49:4-12.) In other words, as Mr. Briggs explained, inmates are not authorized to file an appeal with the third level until the inmate has gone through the first and second levels. (Tr. at 49:20-24.) Plaintiff would have had 30 days from rejection of the appeal

---

[1] The Court notes some frustration with this portion of Mr. Goree's testimony because he relied on his memory of review of records that were not put into evidence. Given the importance of verifying that no appeals were submitted during this period, the Court would have greatly appreciated a printed record of the supplemental information verifying the entries on the log that did not include dates. Nevertheless, given Mr. Goree's testimony based on his personal knowledge, the Court will accept Mr. Goree's testimony as evidence of this fact in this circumstance.

9

1  to refile the appeal with the appeals office and still be considered timely. (Tr. at 53:21-54:11.)
2  Also according to the log, it does not appear that Plaintiff ever corrected his rejected appeal.
3  (Tr. at 50:19-24.)

### C. **Plaintiff's Evidence of Exhaustion of Administrative Procedures**

Plaintiff testified that after the incident on October 22, 2013, as soon as he got back to his cell, he filed a 602. (Tr. at 110:2-4.) He placed it in the door and gave it to a third watch correctional office. Plaintiff also testified that Corcoran suffered from corruption and correctional officers were not letting 602s get processed when they alleged wrongdoing by other correctional officers. (Tr. at 110:10-15.)

Plaintiff testified that he filed four 602s in detail about the incident. He stated "I love writing appeals and I love to see them go to all levels. . . . I have probably like 200 appeals that I filed since I've been down . . . So there shouldn't be no reason why I wouldn't want to file an appeal." (Tr. at 110:25-111:6.) Plaintiff also testified he never understood that he could put his appeal in a drop box. (Tr. at 112:11-17.) Plaintiff also wrote two letters to the warden.

Plaintiff never received notice from the appeals coordinator that it had received Plaintiff's appeals. He did not receive notice from the warden either. (Tr. at 112:21-113:4.) Plaintiff testified "So what was happening was the C/Os were throwing away the mail; my appeals and opening my confidential mail with the warden and not letting it go to the warden." (Tr. at 113:16-18.) Plaintiff then filed a letter to the third level appeals office, saying that his appeals were being thrown away. However, the third level appeals office rejected his appeal. (Tr. at 113:19-114:7.) After this rejection, Plaintiff testified "I didn't have no other choice but to file a complaint with the courts. That was my only option because they were obviously throwing my appeals away because the appeals coordinator was not getting them. I was not getting no notice." (Tr. at 114:8-14.)

Plaintiff admitted into evidence exhibit H-13-15, which he states is a hand written copy of a 602 appeal he wrote and submitted on November 5, 2013. (Exh. H-13-15.) He rewrote the 602 and attached it to his complaint. (Tr. 123:2-8.)

Plaintiff also disputed that the appeals office takes 30 days to respond to appeals.

1  Plaintiff testified that the appeals office gives notification that an appeal is being processed
2  quickly after receiving it.  (Tr. at 130:12-17.)

3        **D.**      <u>**Analysis of Evidence**</u>

4        The Court has evaluated the evidence received.  Ultimately, Defendants' and Plaintiff's
5  versions of events are irreconcilable and truly present a dispute of fact.  Defendants contend
6  that Plaintiff failed to submit any appeals other than the improper appeal to the third level,
7  whereas Plaintiff testified that he submitted eight other appeals, all of which were discarded by
8  the prison.

9        In terms of demeanor, all witnesses appeared truthful.  All of Defendants' witnesses
10 testified professionally and clearly.  None appeared to have any motivation to lie, except
11 insofar as it would assist the prison more generally.  None were involved in the underlying
12 altercation with Plaintiff.  Defendants' version of events is supported by the logs and other
13 documentation.  Plaintiff's demeanor did not reveal any fabrication either.  Plaintiff was
14 responsive to questions and did not exhibit any overt signs of lying.  The Court cannot rest its
15 decision on any clear observations of false testimony.

16       Ultimately, however, the Court finds that the evidence is more supportive of
17 Defendants' version of events.  The undisputed records from the time period demonstrate that
18 the prison's appeals office did not receive any appeals at the first or second level during the
19 relevant time period.  Plaintiff does not contest the accuracy of these records.  Rather, he relies
20 on the possibility that the correctional officers who received his 602 grievances purposefully
21 destroyed them.  No witnesses support Plaintiff's account, but Defendant called multiple
22 witnesses from the prison testifying that it would have been counter to policy and procedure to
23 destroy appeals and could have resulted in discipline or termination for a correctional officer to
24 do so.  Additionally, given the number of separate appeals Plaintiff alleges to have submitted,
25 Plaintiff's version of events requires that multiple correctional officers be involved in the
26 destruction of grievances from at least two separate buildings.  On cross-examination, Plaintiff
27 testified that he filed nine appeals in total:  four in the building, two at the hospital, two at the
28 building to the warden, and one to the chief of appeals.  (Tr. at 124:7-19.)  Thus, Plaintiff's

version of events requires that multiple separate correctional officers decided to destroy Plaintiff's appeals, putting their own employment at risk. Although such an occurrence is possible, it is not likely or supported by evidence.

Plaintiff's testimony also suffers from inconsistencies. While each inconsistency can perhaps be explained by the passage of time or inattention to detail, together they cast doubt on Plaintiff's version of events. Plaintiff alleged in his first amended complaint that he first submitted an appeal on October 26, but testified in court that it was October 22. The Court acknowledges that Plaintiff provided the explanation that someone had written his first amended complaint for him, (Tr. 141:2-24), but it is nevertheless troubling. Plaintiff does not have any form 22s, which defense witnesses testified were used as a receipt for grievances. Plaintiff contended that he did not realize such a form could be used as a receipt. (Tr. at 139:7-10.) Plaintiff's handwritten 602, which Plaintiff states is his only hand-written copy of one of the 602 grievances he sent, is dated November 5, 2013 and indicated that he was housed in cell number 3A03-250L at that time. (Exh. H-13.) But it appears from prison records that Plaintiff was in the mental health crisis bed that day and was not assigned to cell 3A003, 250001L until November 7, 2013. (Exh D.)

Perhaps the greatest inconsistency between Plaintiff's account and the evidence presented concerns the timing of Plaintiff's appeal to the third level. The first amended complaint states that Plaintiff submitted his appeal to the third level of appeals on November 15, 2013, (Tr. at 133:3-7), but defense records indicate it was received by the appeals office in Sacramento on October 28, 2013. (Exh. B). What bothers the Court is not just the difference in days—the proximity of the date of the incident and the date the third level appeals office received that appeal undermines Plaintiff's account that Plaintiff had filed eight 602's before he filed an appeal to the third level chief appeals office, and that it was truly a "last resort." (Tr. at 139:21-140:18) In short, six days is an insufficient time for Plaintiff to file eight 602s and know with a certainty they had not been accepted by the appeals office.

Finally, the timing of Plaintiff's complaint itself casts doubt on Plaintiff's account that he had made all attempts to file his grievances and knew that all his appeals had been destroyed

before filing the complaint.  Plaintiff filed his original complaint on December 2, 2013.  (Exh. G.) Plaintiff signed it on November 20, 2013.  (Exh. G-6.) According to defense witnesses, the appeals office is entitled to thirty days to respond to any appeal.  While Plaintiff testified that he believes they often notify inmates of receipt earlier, it is difficult to imagine that Plaintiff knew for a certainty that eight appeals submitted in the last month had been destroyed at the time he filed his complaint.

## VII. CONCLUSION AND RECOMMENDATIONS

For those reasons, the Court finds that Defendant has met its burden of proving its affirmative defense of failure to exhaust Plaintiff's administrative grievances before filing the complaint and RECOMMENDS that Plaintiff's lawsuit be dismissed without prejudice for failure to exhaust.

Based upon these Findings of Fact and Conclusions of Law, **IT IS HEREBY RECOMMENDED that:**

1. Defendant's motion for summary judgment on the issue of failure to exhaust, filed on June 21, 2016 (ECF No. 43), be DENIED;
2. Plaintiff be deemed to have failed to satisfy his exhaustion requirement based on the evidence presented at the evidentiary hearing; and
3. Plaintiff's case be DISMISSED without prejudice for failure to exhaust.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **Within thirty (30) days** after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.

\\

\\\

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 7, 2016**  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE